IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN YEPEZ and VERONICA YEPEZ, on behalf of the joint bankruptcy estate of Juan G. Yepez and Veronica Yepez,<br><br>              Plaintiffs,<br><br>    v.<br><br>SPECIALIZED LOAN SERVICING, LLC,<br><br>              Defendant. | Case No. 18 C 7422<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Juan and Veronica Yepez ("Plaintiffs") bring this proceeding against their former mortgage loan servicer, Specialized Loan Services, LLC ("SLS"). In 2013, Plaintiffs experienced financial difficulties that led them to seek relief pursuant to Chapter 13 of the U.S. Bankruptcy Code which allows individuals receiving regular income to obtain some relief while retaining their property. Their original Complaint did not acknowledge the bankruptcy, so Plaintiffs have amended their Complaint to declare that the action is now being brought on behalf of their joint bankruptcy estates.

According to the Second Amended Complaint, Plaintiffs entered into a residential mortgage loan with Royal Savings Bank ("Royal"). The loan was secured by a mortgage on the Plaintiffs' home in Chicago, Illinois.

Plaintiffs ran into financial difficulties in 2012, which caused their mortgage to go into a default status.  On April 30, 2013, Royal commenced a foreclosure proceeding in the Circuit Court of Cook County, which has been stayed pending resolution of the bankruptcy.  SLS began servicing Plaintiffs' loan in November 2015.  On December 27, 2016, Plaintiffs, through their counsel, submitted a loss mitigation application.  On January 3, 2017, SLS acknowledged receipt of the application but advised Plaintiffs that their application was "incomplete."  Plaintiffs were advised that they needed to submit documentation concerning some rental property that they apparently owned.  Specifically, they were told that they needed to supply a "Mortgage Statement-OR-Rental Income/Lease Agreement and Mortgage Statement and Rental Income-Proof of Receipt."  On April 17, 2017, Plaintiffs' counsel sent the requested documents to SLS.

 Having heard nothing from SLS, Plaintiffs, through their counsel, on June 9, 2017, sent a written communication to SLS, labeled a "Notice of Error" pursuant to 12 C.F.R. § 1024.35 of Regulation X of the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2601 *et seq.* ("RESPA"), for failure to evaluate the loss mitigation options available to Plaintiffs as allegedly required by 12 C.F.R. § 1024.41(C)(1) within 30 days.  On July 5, 2017, SLS responded to Plaintiffs reiterating its contention that the application was "incomplete," again stating that it lacked a "mortgage statement or rental income lease agreement and public assistance award letter or public assistance proof of receipt."  Therefore, it concluded that its processing of their application "was not in error."

On August 29, 2017, Plaintiffs, through their counsel, resent all the documents that they had previously provided to SLS on April 17th. The letter asked whether SLS needed anything further. Having received no response from SLS, On September 1, 2017, Plaintiffs sent a second Notice of Error to SLS. SLS failed to acknowledge or respond to the second Notice of Error. However, on September 5, 2017, SLS sent Plaintiffs a letter advising them that their request for loss mitigation had been denied because they "did not provide us with the documents we requested." It did not describe what documents that it claimed were lacking.

On September 19, 2017, after receiving the denial letter, Plaintiffs appealed the denial, demanding an independent review of their application. On September 20, 2017 and on September 22, 2017, SLS, through its agent, again advised Plaintiffs that their application was incomplete because, using nearly identical language, it lacked proper documentation including the requested "Mortgage Statement-OR-Rental Income/Lease Agreement and Mortgage Statement and Rental Income-Proof of Receipt." Plaintiffs were given until October 25, 2017, to supply the "required documentation." On October 28, 2017, Plaintiffs resubmitted the documentation that they had previously sent SLS. Nevertheless, SLS, on November 10, 2017, sent a second denial letter to Plaintiffs. The notice did not give a reason for the denial. On December 21, 2017, Plaintiffs sent a new Notice of Error to SLS for failing to use reasonable diligence in completing the borrower's loss mitigation application.

On January 23, 2018, in response to the latest Notice of Error, SLS, for the first time, elaborated on what was allegedly missing: it requested a letter of explanation from Veronica Yepez as to the monthly mortgage payments on the two rental properties, it further questioned whether the rental properties were escrowed for taxes and insurance, it requested property taxes statements and homeowner's insurance declaration reflecting the annual premium, and an explanation why the property taxes bills on one of the rental properties were in someone else's name. Thus, in SLS's opinion the denial was not in error, because it had not received this information.

The Plaintiffs claim that the failure on the part of SLS to respond on a timely basis has caused them to (1) "spend significant time gathering duplicative documents and filling out duplicative forms in completing their loss mitigation applications; (2) spend money on paper, postage and legal fees to compile and send such submissions to SLS; (3) incur legal fees and expenses to draft and mail notices of error via Certified U.S. Mail in attempting to seek SLS's compliance with their obligations under Regulation X, that is to ensure that Plaintiffs' loss mitigation application was properly reviewed for eligibility for all loss mitigations options available to them." They also contend that SLS has denied them "the opportunity to have their loan properly considered alternatives to foreclosure and to put their financial house in order" and "to begin to rehabilitate their credit standing." They further contend that as a result "they have been consumed by worry and frustration over the status of their loan."

Plaintiffs filed this suit on November 8, 2018, containing three separate claims for violation of the Real Estate Settlement Procedures Act ("RESPA")-Counts I, II, and III; a claim of violation of the Fair Debt Collections Practices Act ("FDCPA")-Count IV; and a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")-Count V.  SLS has moved to dismiss all five counts.

## II.  DISCUSSION

### A.  Counts I, II, and III — RESPA

Count I charges SLS with violating 12 CFR § 1024.41(b)(1) for failing to use reasonable diligence to complete Plaintiffs' loss mitigation application.  Count II charges SLS with violating 12 CFR § 1024.35(b)(11) for failure reasonably to investigate and for failure to respond to notice of error in violation of 12 CFR § 1024.35(c)(1). Count III charges SLS with violating § 1024.35(d) for failure to acknowledge receipt of notices of error.

RESPA is a consumer protection statute that regulates the real estate settlement process, including service of loans and requests for loan modifications.  It provides a private cause of action for violation of its terms. § 2605(f).  One of the duties imposed on lenders is the duty to respond to "Qualified Written Requests." ("QWR").  12 U.S.C.A. § 2605.  A QWR gives the borrower an opportunity to obtain information from the lender and is to contain sufficient information to allow the lender to identify the borrower and what information is requested. Within 30 days the lender must conduct an investigation and provide the borrower with a written explanation containing the information requested or the name of an individual that can assist the borrower.  § 2605(e).

Under C.F.R. § 1024.35(a), "notices of error" are considered QWRs and vice versa, and under § 1024.35(b)(7) the term "error" includes "failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39, which includes application instructions (§ 1024.39(b)(iv)).

The case of *McClain v. Citimortage, Inc.*, No. 15 C 6944, 2016 WL 269568 (N.D. Ill. Jan. 21, 2016), is helpful in interpreting RESPA and in deciding the issues in this case. In *McClain,* the plaintiff sought information concerning a pending loan modification. *McClain,* 2016 WL 269568, at *2. The defendant, as here, argued that the requests in that case did not involve servicing of an existing account. *Id.* at *4. The Seventh Circuit, relying on *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011), which adopted an expansive approach to interpreting § 2605, held that letters concerning status of a loan modification request did concern servicing of an existing loan and therefore required a response under Section 2605.

With respect to Count I, SLS argues that Plaintiffs' main complaint under § 1024.41 is that it failed to notify them promptly of the needed documents to complete the loss mitigation application, after it had already done so upon receiving the initial application. SLS claims that it need only respond to one application and need not respond to succeeding filings. It asks the Court to interpret § 1024.41(b)(2)(i) as relieving a loan servicer of the obligation of the five-day response requirement on subsequent resubmissions responding to notification of application incompleteness. Thus, in SLS's opinion its alleged failure

to respond to Plaintiffs' subsequent filings do not violate this provision of RESPA.

However, interpreting these provisions liberally as required by Seventh Circuit case law, these regulations require an adequate response by the loan servicer for why the subsequent filings in support of the initial application were deemed inadequate. Here SLS answered each attempt by Plaintiffs to comply with SLS's requests for additional information, with the same boiler plate response that it made in its previous responses. The only exception was SLS's last communication with Plaintiffs made on January 23, 2018, after it had denied Plaintiffs' application for the second time. For the first time, SLS explained in some detail what information it deemed lacking from Plaintiffs' application. This failure to communicate can certainly amount to a failure on SLS's part to exercise reasonable diligence to complete the Plaintiffs' loss mitigation application. Thus, the Court believes that Count I as pleaded is sufficient to withstand the motion to dismiss Count I.

The Court likewise finds that the Complaint with respect to Counts II and III, while there may be some duplication, will stand also since they are two other sides of the same issue, *i.e.,* SLS's resolute refusal to assist Plaintiffs in their endeavor to obtain a loss mitigation by failing to acknowledge and respond to their notices of error. Each notice of error was met with the same apparent willful refusal to specify what Plaintiffs needed to do to complete the loss mitigation application, *e.g.,* "that you did not supply us with a mortgage statement or rental agreement monthly rental income proof of receipt."

According to the Complaint, Plaintiffs did supply such documentation multiple times only to receive the same unhelpful response from SLS.

SLS further argues that Plaintiffs have not alleged any compensable damages resulting from the alleged violations of RESPA. However, Plaintiffs have alleged that SLS's failure to process their application properly has caused them to experience emotional distress which has been held to constitute damages under RESPA. *Catalan*, 629 F.3d at 696. The Plaintiffs also allege that they have incurred numerous costs, including attorney's fees, in the futile attempts to respond to the repetitive requests for information. Numerous courts have held that costs incurred after an incomplete or insufficient response to notices of error are recoverable under RESPA. *See Golbeck v. Johnson Blumberg & Associates, LLC*, 2017 WL 3070868 (N.D. Ill., July 19, 2017). Accordingly, the Motion to Dismiss Counts I, II, and III is denied.

### B. **COUNT IV - FDCPA**

The issue with respect to Count IV is whether the actions, or inactions on the part of SLS, were made in connection with the collection of a debt. 15 U.S.C. § 1692e. SLS points out that all communications from it expressly stated that the communications were not a demand for payment or a notice of personal liability of the recipient. SLS also argues that most of the communications, except for the last two, occurred after the running of the one-year statute of limitations for a FDCPA claim. Plaintiffs do not respond to the statute of limitations argument but, in response to the communication in connection with the collection of a debt argument, point out that a demand for payment is only one type of communication that can run afoul of the FDCPA. They cite *Gburek v.*

*Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010). That case also involved communications regarding a possible loan modification where the correspondence from the debt collector did not make an explicit demand for payment. *Id.* at 382. The court noted that a demand is but one of several factors to be considered in a FDCPA case with respect to whether the communication was with respect to collection of a debt. *Id.* at 385. The court then stated that other factors that should be considered are the relationship between the parties and the purpose of the communication. *Id.* In *Gburek,* the court determined that the purpose of the letters regarding loan modification was to encourage plaintiff to cooperate in an effort to enter into a loan modification by supplying formation. *Id.* This request the court considered was made with respect to collection of a debt, *i.e.,* The mortgage loan. The debtor there was not in bankruptcy. However, in this case it seems that the purpose of SLS's communications or lack thereof was to inhibit the obtaining of a loan modification rather than encouraging them to do so, which is the antithesis of an attempt to collect a debt. That fact, plus the disclaimer, seems to foreclose an FDCPA claim. The Motion to Dismiss Count IV is granted.

### C. COUNT V — ICFA

Plaintiffs claim that SLS violated the ICFA "by engaging in prohibited conduct relating to the "evaluating and handling of [the application]." Specifically, the ICFA violation consisted of SLS repeatedly and continuously misrepresenting the status of Plaintiffs' application and its failure to acknowledge receipt of documents submitted by the Plaintiffs. SLS argues that Plaintiffs have failed to allege

fraud with specificity as required by FRCP 9(b). *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011). However, Plaintiffs allege with peculiarity each communication they received from SLS, which constitutes its ICFA claim, all of which were attached to the Complaint as exhibits. Thus, this argument is out. SLS also argues however, that Plaintiffs have failed to allege recoverable damages as required by *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). Illinois requires provable economic loss before a party is entitled to aggravation, inconvenience, and emotional loss. Here Plaintiffs' claim consists of some postage and time expenditures plus attorneys' fees in preparing responses to SLS, and inconvenience and emotional loss, none of which is recoverable under the ICFA. *Price v. Seterus, Inc.*, No. 15 C 7541, 2016 WL 1392331 (N.D. Ill., April 8, 2016). Obviously, if Plaintiffs had suffered loss of their home due to foreclosure (which they did not), economic loss would be provable. The Motion to Dismiss Count V is granted.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Counts I, II, and III is denied. Defendants' Motion to Dismiss Counts IV and V is granted.

**IT IS SO ORDERED.**

Dated: 6/27/2019

Harry D. Leinenweber, Judge
United States District Court